JUDGE JONES

**07 CV 2989**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————X
                                            )
Pervez **POROOSHASP**,                      )
                                            )       APR 13 2007
*File Number: A28 543 896*                  )
                                            )
                                            )CASE NO.: _____
          Petitioner,                       )
                                            )
     v.                                     ) JUDGE: _____
                                            )
Michael **CHERTOFF**, Secretary of the United )
States Department of Homeland Security; Alberto )
**GONZALES**, Attorney General of the United )
States, U.S. Department of Justice; Andrea J. )
**QUARANTILLO**, District Director, USCIS;  )
**United States Citizenship and Immigration** )
**Services**; Robert S. **MUELLER**, Director, **Federal** )
**Bureau of Investigation**,                )
                                            )
          Respondents.                      )
————————————————X


**PETITION FOR *DE NOVO* REVIEW OF A NATURALIZATION APPLICATION
AND COMPLAINT FOR WRIT OF MANDAMUS**


Petitioner,[1] Pervez Porooshasp, by and through his undersigned attorneys, Barst & Mukamal, LLP, 2 Park Ave, New York, NY 10016, (212) 686-3838, commences this action against the above-named Respondents, and states as follows:

**NATURE OF ACTION**

1. This is an action for *de novo* review of an application for naturalization under Section 336(b) of the Immigration and Nationality Act (INA), 8 U.S.C. 1447(b), and an action for a Writ of Mandamus pursuant to 28 U.S.C. § 1361, as well as, attorneys' fees and costs pursuant to 28 USC §2412.

---

[1] Mr. Porooshasp is both a Petitioner and a Plaintiff. For the sake of simplicity, we refer to Mr. Porooshasp as Petitioner, and the Respondents/Defendants as Respondents.

## JURISDICTION AND VENUE

2. The Court's jurisdiction over the subject matter of this case is explicitly provided for in 8 USC §1447(b), which states in pertinent part: "[i]f there is a failure to make a determination under section 335 before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions to the Service to determine the matter."

3. Jurisdiction in this case is also proper under 28 U.S.C. §§1331 and 1361, 5 U.S.C. §701 *et. seq.*, and 28 U.S.C. §2201 *et. seq.* Relief is requested pursuant to said statutes. Specifically, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," and under 28 U.S.C. §1361, which provides the district court with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Petitioner." Further, the Declaratory Judgment Act, 28 U.S.C. §2201, provides that: "[i]n a case of actual controversy within its jurisdiction... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Review is also warranted and relief sought under the Administrative Procedure Act, 5 U.S.C. §§ 701 et seq., 702, 706(1) and 555(b). Jurisdiction is not precluded by 8 U.S.C. § 1252(g), which pertains only to review of orders of removal. *See Shanti, Inc. v. Reno*, 36 F.Supp.2d 1151, 1158 (D.Minn.1999); see also *Burger v. McElroy*, 1999 WL 203353 (S.D.N.Y. 1999) *unpub.*; *Fu v. Reno*, 2000 WL 1644490 (N.D.Tex. 2000) *unpub.*; *Mart v. Beebe*, 94 F.Supp.2d 1120, 1123-23 (D.Or.2000); *Talwar v. INS*, 2001 WL 767018 (S.D.N.Y. 2001) *unpub.*

4. Venue is proper in this district pursuant to 28 USC §1391(e)(3) based on the fact that Petitioner is a resident of Yonkers, New York within the jurisdiction of the United States District Court for the Southern District of New York. Additionally, one or more of the Respondents reside in New York, New York, and Petitioner was interviewed in the New York, New York office of Respondents.

5. In connection with the claim for attorneys' fees and costs, under the Equal Access to Justice Act 28 U.S.C. §2412, Petitioner seeks to recover costs and attorneys' fees incurred in bringing this action. Petitioner has retained the law firm of Barst & Mukamal, LLP to represent him in this action. Petitioner is obligated to pay reasonable attorneys' fees and costs incurred in the prosecution of this cause.

2

6. All conditions precedent, to bringing this lawsuit have been satisfied, in that all administrative appeals and avenues of relief have been exhausted.

## THE PARTIES

7. Petitioner, Shevan Porooshasp, is a native and citizen of Pakistan. He was granted United States Lawful Permanent Residence status by the former Immigration and Naturalization Service on September 22, 1994. Petitioner resides in Yonkers, New York.

8. Respondent, Michael Chertoff, is the Secretary of the United States Department of Homeland Security, with responsibility for the administration of applicable laws and statutes governing immigration and naturalization.

9. Respondent, Alberto Gonzales, is the Attorney General of the United States and is the head of the United States Department of Justice, with responsibility for the administration of laws and statutes governing immigration and naturalization, as well as oversight of the Federal Bureau of Investigation.

10. Respondent, Andrea J. Quarantillo, is the District Director for the Bureau of Citizenship and Immigration Services of the United States Department of Homeland Security and is in charge of naturalization program at the New York, New York USCIS office.

11. Respondent, Bureau of Citizenship and Immigration Services (formerly, the Immigration and Naturalization Service) is an agency of the federal government within the Department of Homeland Security (formerly, within the U.S. Department of Justice) and is responsible for the administration of laws and statutes governing immigration and naturalization.

12. Respondent, Robert S. Mueller, is the Director of the Federal Bureau of Investigation. He is responsible for conducting criminal record checks and name checks under the National Name Check Program, and other programs, which provides USCIS with information from the FBI database in response to USCIS requests.

## FACTUAL ALLEGATIONS

13. This lawsuit arises from the improper and unjustified failure of Respondents to make a determination on Petitioner's application for naturalization within 120 days from the date of Petitioner's interview, and Respondents' continuing failure to complete security checks and adjudicate Petitioner's application in derogation of their duty to do so.

14. Petitioner was granted United States Lawful Permanent Residence status on September 22, 1994 under File Number A28 543 896 by Respondents (then known as the INS).

15. Subsequently, Petitioner filed a petition for naturalization with Respondents on July 25, 2003. Petitioner appeared for a naturalization examination before an Immigration Officer on February 10, 2004, and passed his English and U.S. History tests.

16. Petitioner was also interviewed in conjunction with his naturalization application at the New York, New York USCIS office on February 10, 2004.

17. At the conclusion of this interview, INS officer C. Gonzalez issued a Form N-652 indicating that Petitioner had passed his examinations. This Form N-652 also indicated that, after reviewing the file and considering Petitioner's case, Officer Gonzalez determined that Petitioner appeared eligible for naturalization and indicated that Petitioner's application was being recommended for approval. Petitioner was told he would be receiving a notice informing him of the date and time of his oath ceremony within two or three months.

18. On May 7, 2004,[2] Respondents issued a form request for additional documents instructing Petitioner to provide "Indictment records for arrest on April 14, 1997." This request was issued only to Petitioner and not to Petitioner's counsel despite the presence of a Form G-28 in Respondents' file indicating Petitioner's counsel of record. Petitioner was given until June 16, 2004 to comply with this request.

19. On June 4, 2004, Petitioner, through counsel, submitted the complete indictment related to his June 16, 2004 arrest to Respondents by hand at the New York, New York office.

20. Having received no further communication from Respondents about his application, Petitioner, through counsel, submitted a written inquiry into the status of Petitioner's application by hand on September 17, 2004. This inquiry made reference to the June 4, 2004 submission of documents.

21. Petitioner received no response to this inquiry, and began making regular inquiries into the status of his application. These inquiries were to no avail. Frustrated with the lack of information and the unexplained delay, Petitioner enlisted the aid of U.S. Congresswoman Nita M. Lowey, who began to inquire about Petitioner's case.

22. On October 7, 2005, Respondents issued another form request for evidence requesting the plea minutes from Petitioner's conviction and page three of the indictment.

---

[2] The date is handwritten and unclear. It appears to be either May 7 or May 17, 2004.

23. This request was once again issued **only** to Petitioner, and not his counsel.

24. On November 1, 2005, Petitioner, acting pro se, provided Respondents with a copy of the plea minutes from his conviction, but neglected to include page three of the indictment. However, as Respondents already had the complete indictment in their file, this oversight was not material or relevant to Petitioner's application.

25. On March 31, 2006, Respondents issued a decision denying Petitioner's application. This denial alleged that Petitioner abandoned his application by failing to provide page three of his indictment, and had, based on the record, failed to prove his good moral character for the statutory period.

26. On April 24, 2006, Petitioner, through counsel, timely filed an N-336 appeal of naturalization decision/request for hearing with Respondents, arguing that Respondents had been provided with a complete copy of the indictment, including page three, on June 4, 2004, so any failure on the part of Petitioner to re-submit this document was irrelevant and an improper reason to deny his application, and that Respondents' repeated failure to provide Petitioner's counsel of record with copies of requests was improper and was, in fact, a contributing cause of Petitioner's failure to re-submit page three of the indictment.

27. On July 8, 2006, Respondents issued an appointment notice reopening Petitioner's case and indicating that Petitioner was scheduled for a hearing on his N-336 appeal on August 3, 2006.

28. Petitioner appeared, with counsel, at the hearing on August 3, 2006, and was interviewed by USCIS Officer Kwong. Petitioner was informed that a decision would be made on his case within two months. Petitioner was also informed that all cases involving applicants with criminal convictions had to be reviewed by the Senior DAO prior to approval.

29. On At this interview, Officer Kwong indicated that Petitioner's fingerprints had expired, but refused to issue an appointment notice for Petitioner to supply current fingerprints.

30. On September 25, 2006, Petitioner's counsel sent a letter to Officer Kwong to inquire about the status of Petitioner's application. No response was received.

31. In approximately October, 2006, Petitioner went to the offices of Congresswoman Nita M. Lowey, who called USCIS and spoke to a supervisor. This supervisor indicated that Petitioner's file was still with Officer Kwong, who was allegedly waiting for a supervisor to review the file. No mention was made of pending security checks.

32. Petitioner made numerous inquiries as to the status of his application, but received no response.

33. On March 1, 2007, U.S. Congresswoman, Nita M. Lowey, sent a letter to Petitioner indicating that Respondents had informed her that Petitioner's case was delayed because of pending security checks, and Respondents could not even indicate an approximate date by which Petitioner's case would be completed.

34. Petitioner was arrested April 14, 1997 on charges stemming from an altercation with his wife on or about April 14, 1996.

35. Petitioner was indicted on Charges of Sexual Abuse, Endangering the Welfare of a Child, two counts of Assault in the Third Degree and Harassment. Despite these serious allegations, Petitioner was convicted of one count of Assault in the Third Degree on June 24, 1998 as a result of pleading guilty, and sentenced to three years probation. The other counts of the indictment were dismissed.

36. Despite the very serious allegations in the indictment, Petitioner was only convicted of one count of Assault in the Third Degree. The other allegations are unsubstantiated, and may not be held against Petitioner.

37. Petitioner was convicted on June 24, 1998. He did not file his application for naturalization until July 25, 2003. As a result, Petitioner's conviction falls outside of the statutory five year period for which he must demonstrate good moral character.

38. Petitioner has no further criminal record, and is a person of good moral character.

39. Although Petitioner's conviction may be considered to the extent it bears on his current moral character even though it occurred outside of the statutory period, Petitioner has successfully completed his probation and has not had any further arrests. His conviction is thus not relevant to his current moral character.

40. On information and belief, Respondents have page three of Petitioner's indictment in their file.

41. On information and belief, if Respondents do not have page three of the indictment in their file, it is a result of events occurring while it was in Respondents' control, and due to their own negligence.

42. On information and belief, Respondents are not conducting security checks related to Petitioner's application, but Petitioner's application remains on a shelf awaiting action, which Respondents refuse to take.

43. On information and belief, the delay in adjudicating Petitioner's application is wholly unrelated to security checks, and is due entirely to Respondents' lack of action on the case.

44. On information and belief, any current delay due to security checks is due, in part, to Respondent Mueller's failure to act to ensure the timely completion of those checks, and in part to the other Respondents' intentional failure to initiate and perform any necessary security checks, despite having more than ample opportunity to do so.

45. Petitioner's application was deemed approvable at the time of his interview on February 10, 2004 by Respondents.

## CLAIMS

46. Respondents have a clear and non-discretionary duty to adjudicate applications for naturalization pursuant to law and Respondents' own regulations. This includes completing any necessary security checks.

47. Respondents USCIS and the FBI are administrative agencies subject to 5 U.S.C. § 555(b), which provides "[w]ith due regard for the convenience and necessity of the parties or their representatives and **within a reasonable time**, each agency **shall** proceed to conclude a matter presented to it." (Emphasis added).

48. The completing of security checks and adjudication of applications for naturalization are purely ministerial duties performed by Respondents.

49. Respondents were aware of Petitioner's conviction at the time of his initial interview, but have used it as a basis to intentionally delay the adjudication of Petitioner's application.

50. Respondents have intentionally engaged in dilatory tactics to delay adjudication of Petitioner's application, as evidenced by their totally improper denial of that application for failing to provide documents that were already in their file.

51. Despite Respondents' acknowledgment that Petitioner's fingerprints have expired, they have refused to issue him an appointment notice so that he may provide new fingerprints in order to further delay the adjudication of Petitioner's application. Should Petitioner's security checks be completed, Respondents will no doubt claim that they cannot adjudicate Petitioner's application because his fingerprints are not current.

52. As of October, 2006, Petitioner's file was still in the possession of Officer Kwong, who allegedly was awaiting review of the file by a supervisor. This was Respondents' stated reason for not having adjudicated Petitioner's application by

that time. On information and belief, Petitioner's application has been sitting on a shelf since at least August, 2006, and Respondents' claim that the application is being held up by pending security clearances is a ruse designed to conceal Respondents' deliberate inaction on this case.

53. In the event that Respondents had, in fact, timely begun security checks, Respondents Mueller and the FBI have unreasonably delayed in the completion of those checks.

54. Respondents have known Petitioner's name and date and location of birth since he was granted Permanent Residence on September 22, 1994. Respondents require **only** this information to complete the FBI Name Check. Further, they have had Petitioner's fingerprints in their possession since that date. **Respondents have had all the information and materials they need to conduct any necessary security checks since well before Petitioner's initial interview on February 10, 2004.**

55. Respondents' intentional and willful failure to complete security checks and adjudicate Petitioner's application is totally unreasonable, unjustifiable, and unlawful.

56. On information and belief, the delay in completing Petitioner's security checks is based more on Petitioner's Pakistani origin than on anything in his file.

57. Petitioner has been harmed by the unreasonable delay in that there are restrictions on his ability to travel, and he has to renew his "green card" periodically. He has also been deprived of the peace of mind that he is entitled to by the unsettled status of his application. Further, Petitioner has had to hire an attorney to pursue his case in federal court as a result of Respondents' failure to act on his application. Petitioner has, as a result of the foregoing, been forced to endure significant expense, inconvenience, and loss of his peace of mind.

58. The Petitioner was, at the time of the filing of the Application, and is at the present time, **fully eligible** for naturalization. The Petitioner fully satisfied all of the naturalization requirements including: being admitted to the United States as a lawful permanent resident (INA §318, 8 U.S.C. §1429); residing continuously for five years subsequent to Lawful Permanent Resident status and prior to filing a petition for naturalization (INA §316(a), 8 U.S.C. §1427(a)(1)); who was physically present in the United States for half of the statutory period (INA §316(a), 8 U.S.C. §1427(a)); being a person of good moral character; (INA §316(a)(3), 8 U.S.C. §1427(a)(3)); demonstrating favorable disposition and attachment to the Constitution and form of Government of the United States (INA §316(a)(3), 8 U.S.C. §1427(a)(3)); having knowledge of the English language (INA §312(a)(1), 8 U.S.C. §1423(a)(1)); and having knowledge of the fundamentals of American history and government (INA §312(a), 8 U.S.C. §1423(a)).

59. The Respondents' and their employees' failure to make a timely determination within the prescribed 120-day time period is unjustified, unreasonable, and a violation of their duties to perform fair and proper administrative naturalization. The Petitioner was and is fully eligible for naturalization. Thus, the District Director of the then INS (now USCIS), improperly and wrongfully failed to adjudicate Petitioner's naturalization application. Petitioner, therefore, respectfully invokes the *de novo* jurisdiction of this Court under INA § 336(b), and the Court's equitable and statutory power to enter a writ of Mandamus compelling Respondents to complete security checks and adjudicate Petitioner's application.

## REQUEST FOR RELIEF

60. **WHEREFORE**, the Petitioner requests that the Court enter a judgment in favor of Petitioner and against Respondents, by (i) reviewing the Petitioner's eligibility for naturalization *de novo* and granting Petitioner's naturalization application, or, in the alternative, remanding the matter to the Respondent agency with appropriate instructions to make a determination within 30 days; (ii) by issuing a Writ of Mandamus to compel Respondents to immediately adjudicate Petitioner's application for naturalization; (iii) by issuing a Writ of Mandamus to compel Respondents to immediately complete any security checks necessary to such adjudication, or to adjudicate the application on the basis of any previously completed checks and as if any outstanding checks had been favorably completed; and (iii) by entering judgment awarding Petitioner his reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, and awarding all other such relief to Petitioner as this Court deems just, proper and equitable.

Respectfully submitted,

_____
Stephen Singer, Esq.
BARST & MUKAMAL, LLP
2 Park Avenue, 19th Floor
New York, NY 10016
(212) 686-3838

*Attorneys for Petitioner*

Dated this 12th day of APRIL, 2007